21-1309 Jeffrey Lapinske, et al. v. City of Grand Haven, MI, et al. Oral argument, 15 minutes per side. Mr. Gonzado to the appellant. You may proceed. Mark Gonzado for the plaintiff's appellant. I have asked for three minutes of rebuttal time. The facts, the pertinent facts of this case go back some ways in the fall of 1913. Martha Duncan wanted to give 40 acres that she owned in the city of Grand Haven to the people of Grand Haven as a park. She had her attorney draft two documents. The first was a trust deed which indicated the terms under which the park that she wanted created would be governed, but she also created an ordinance that was a precondition to her signing the trust deed, an ordinance that the city council of Grand Haven had to adopt if it wanted this park to be given for the people of Grand Haven. She presented those two documents to the city. The city signed or entered the ordinance and enacted it, and two days later she signed the trust deed. And the most important provision, I think, of that trust deed was, for our purposes here, a provision that stated that not only was the entering of the ordinance in 1913 a precondition to her signing the trust deed, but the repeal of said ordinance or any part thereof at any future time shall render this deed null and void and make the same with no effect that was in the trust deed. 100 years later, the city of Grand Haven did something that brings us together in this case, and that is they repealed portions of the ordinance. They passed the ordinance 13-01, which explicitly repealed at least two parts of the 1913 ordinance. The two parts had to do with the selection of future trustees for the park. The fact is that the actions that the city took in 2013... What do we do with Section 9, which seems to contemplate that the Duncan Park Commission might cease to exist? It was created by the original ordinance. How could it not exist without that ordinance being repealed? Doesn't the ninth section contemplate that there would be something like this that might happen, and then it would just be reformed by the court? No. The ninth section, by the way, the defendants in this case have acknowledged that the ninth second section would apply to only one of the two reversionary provisions in this trust deed. It only goes to the eighth. They have not suggested that it applies to the third, but they are incorrect with respect to their reading of it on the question of the ninth, because their position is that it would render the language nugatory. But the fact is that the way this language reads in the ninth sections, and this is covered in my reply brief, the ninth section would first of all call for a circuit court to take over control and assign new trustees. That did not happen here. The ninth section does not, as it's literally written, have anything to do with the application of the eighth section as well, because the eighth section says if it's in any way, this is null and void. It was amended in 2013. The district court in this case. But how would the commission cease to exist and the ordinance still be in force? It could happen in a number of ways. I'm sorry. No, go ahead. For example, if all three trustees died before a successor was appointed, that would end the commission. That would have ended the commission and it would require nothing to do with the ordinance. It could have happened that way. The defense is suggesting that it had to. It had to tie in to an elimination of some act of the city council. That's simply not true. And their argument has nothing to do again with respect to the third reversionary provision that Mrs. Duncan put into the trustee. The fact is, I won't go into the precise language of this third reversion. It's covered in the brief. It's pretty clear. It did impose obligations. The city council, the city was required to perform all of the acts assigned to it by Ms. Duncan. The fact is that the eighth portion of this is the clearest one. It simply says that this trustee is null and void. If in fact, the 1913 ordinance that she insisted on as a precondition to signing the trustee, if it is amended in any way, and it was in 2013. Now the district court in this case managed to decide this issue without any discussion of the language of either of these reverted provisions, suggesting instead that somehow the overriding purpose of Mrs. Duncan's gift was in fact to create a public park and it remained a public park. But the fact is that as you obviously know, in reading these documents, you must apply the documents according to their text. And in point of fact, Mrs. Duncan, even if she had what the trial judge referred to as an overriding purpose of establishing a park, there was something that would override that overriding purpose. And it was simply that the ordinance that she insisted on as a precondition to signing the trustee had to remain in effect. The trial judge in a footnote added a second reason for arriving at his decision. It was obviously a reference to the Sea Prey Doctrine. This court, I think would be the first appellate court with the opportunity to address Michigan Sea Prey Statute. It's recently been written into a statute. There are no cases to my knowledge at the appellate level on this particular statute. But the trial court seized on the third subsection of that statute as an alternative basis for finding in favor of the city. This was a mistake. That third subsection deals with something quite different than what we have in this case. And that is the third subsection has a limitation on when a non-charitable beneficiary is in fact identified in a trust document as a taker of the proceeds of the trust where the trust feels of its essential purpose. It's very important to understand that this third subsection that the trial judge relied on is in those cases, it applies in those cases in which either the settler is not the identified default in case of the trust fails of its essential purpose or the trust itself is over 50 years old. The trial judge seized on that in coming to the bar this plaintiff's case. But the trial judge made a serious mistake in his reading of this third subsection because what it deals with is there are situations in which a settler can defeat sea prey. You can defeat sea prey by identifying the person who takes in the event that the trust fails of its essential purpose. So the Sea Prey Doctrine obviously kicks in when a trust fails of its essential purpose. You can in fact identify somebody who takes when the trust fails of its essential purpose. That is referred to at least in the Uniform Trust Code as a gift over. And as I've indicated in my brief, it's pretty clear, it's very clear that the Michigan Sea Prey Statute was taken from the Uniform Trust Code, I think it's section 413, which makes it very clear that this subsection applies only to gift overs. Now that's very important here because there was no gift over. Ms. Duncan did not identify a person who took in the event that the... Does she have to do it by name? Well, that's usually what a gift over is. Well, yeah, but you may gift it over to the mayor or give it to, you know, whoever's directing some other park or something. It wouldn't have to have a name, would you? I can't tell you, I know the answer to that, but the point is... Why should we assume though? You seem to be relying on the fact that they didn't name somebody, but I can't tell you. And if you go that far, then why couldn't it be her heirs who are pretty clear? But there was no provision for who took in the event that the trust failed of its essential purpose. There was no such provision, therefore 7416... Who does it revert to under the trust? Who does it revert to? It doesn't revert to anyone as a gift over because there was point is there was no provision for a gift over. There is a reversion provision that you rely on, and I'm asking you whom that reverts to, whom that says it reverts to. Well, the reverter clause was triggered in 2013 when the city... I understand that's your position. It reverts to her heirs, I'm sorry. All right, so it does refer to her heirs, right? You can't say it doesn't refer to anybody, it refers to a category of people that's identifiable. Yes, but my point is, Judge Rogers, that the reverter clause is different than a gift over. A gift over referred to in the sea prey statute is a gift over where you actually identify, you defeat the doctrine of sea prey by identifying somebody who takes in the event, in the event that this trust fails of its essential purpose. There is no such provision in Ms. Duncan's trustee. That's the point. There is a reverter clause. The reverter clause was triggered in 2013. A major point in this case, in my estimation, in light of the restatement of trust which I've cited, which indicates that this trust was null and void as of 2013. There was nothing the city could do after that to resurrect this trust. I see I'm out of time, I'm sorry. Okay, all right, Mr. Wood. Mute. I'm sorry, thank you. May it please the court, Ron Wood on behalf of the Appalachian City of Grand Haven. I'd like to start with a general principle and it's actually found in the appellant's brief and that is the appellant cites in a couple of different places the basic principle that the overarching goal has to be what is the intent of the settler looking at the document as a whole. And I would submit that what that is, is just to create a part in her family's name in perpetuity. That's the goal and that's what the city's done for over 100 years, including the last 10 years of litigation in different courts. And it's exactly what the district court observed, noting that the circumstantial adjustments were to make possible her very purpose. And the appellants also acknowledge at page 39 of their brief that there's no question that the central purpose behind the was to establish a part for the benefits of the city citizens of Grand Haven. Now, as we, and I want to talk about these different sections that appellants counsel references, but as we look at those, I think it's important to step back and ask ourselves, how are the appellants seeking to preserve Mrs. Duncan's intent to create a perpetual part in her to destroy her intent? Or as she put it in section fifth, the natural beauty of the forest and park. I'd like to go through now and address sections that appellants counsel reference. I'll take them in numerical order. Section third, there are a host of problems in the appellants argument regarding section third. The first one of these, well, the overall problem is that they're from not only the sentence, but also the paragraph that it's in and read it independently, but their approach is grammatically incorrect and incorrect in terms of what the language states. Here are the reasons why that approach is in summary fashion, incorrect. First of all, in both their brief at page six and their reply at page two, they insert a period after the word that does not appear in the trustee. We can see that from ECF 77-1 HID 1000. That's misleading. There's no period after the word Duncan Park. Instead there's a comma and that clause is part of the same sentence. I don't know why they put the period in there in both briefs. In addition, that section expressly sets forth two quote express conditions. One is that the land always be held and used as a park and two, that it always be Duncan Park. Nobody is disputing, as the district court observed, that those express conditions have always been met. Now they also go on, the sentence continues to set forth in the language, it says what would happen if those conditions weren't met. And it refers to the conditions here in specified. There's only two conditions specified. They're all in the same sentence, albeit a compound sentence, a long one, but nonetheless all in one sentence. Those are the express conditions and the settler used the word express conditions. So I think the appellant's also wrong in that regard. And the appellant argues that that one clause they want to take out of context must have no meaning then. Well, it certainly could have a meaning because of the two conditions. If the first one is, if they don't use it as a, cease to use it as a public park, but what if the city changed the name of the park? Then the second condition wouldn't be fulfilled and one could argue that that independent clause that they try to rely on could apply. And then lastly, they argue that the words and and nor should be used interchangeably. Mrs. Duncan used the word and specifically on several occasions. The case law doesn't say we just ignore that and use it interchangeably, especially if it would, unless there's some showing that there's a dubious meaning. And here she clearly knew how to use the word or because she used it later on in the same sentence, in the same paragraph. Counselor, could I ask you a question? Are you saying that because there's those two ands in there, X and Y and Z, that if only one of those happened, it wouldn't trigger the result that's provided for him in three? For instance, if they kept the park going beautifully, but they change it to the Smith Park, then I think they'd be in trouble. They'd be in trouble, right? So it has to mean or. Well, there's two conditions. So there's different ands in here. We have two conditions. Those have to both be met, and one and two. And then it says if they're not met, should said parcel of land cease to be used as a park and in case the council or trustee neglects to refuse. That's what it says. And if the council or trustees neglect or refuse to carry out in good faith the terms, or I'm sorry, the conditions here and specify. Why isn't that and an or just as much as the previous and is an or? I'm not sure that the previous and is an or. Well, but it was when you said that violating one of them and not the other was enough to trigger it. I see there you go. What I was, the way to say that is you have to meet one and two. So for example, there's. Why don't you have to meet without getting into all this and or system? If you have to meet one and two, why don't you also have to meet three? Well, there's no third express condition. But it says and and then gives the and whatever. Sure. So we have conditions one and two. And if you don't meet those blank and the two blanks are. If the land ceases to be held as a park and the council or trustees neglect to refuse to carry out the conditions stated here and it is a bit awkward, but I think the clear intent is that there isn't either of the first two is enough, but but the third all by itself is not enough if you don't have the first two. Yeah, the the the cause they are relying upon where it says shall neglect after to carry out with good faith is expressly related to by its terms. It says conditions here in specified and the only conditions here in specified are the two quote express conditions and quote referenced above. Excuse me, Judge Gibbons dropped off. Oh, I'm sorry. Can we pause the what happened? Judge Gibbons dropped off. I'm dropped off. Yeah, let me see if I can get her back on. I'll be right back. There she is. Where were we? Did you all go on after I heard? No, we stopped and waited for you to be reconnected. Well, then Council may proceed. Okay, thank you. I think I'd like to address then section eight and nine of the trust deed. And so can I ask you, can I ask you a question? On the third section? Yes. Are you so are you conceding by the way that that there was a refusal to carry out the in good faith the terms of the of the of the document? Absolutely not. But there doesn't seem to be an argument in your brief. I guess maybe I missed it. Yes, we did. I know. I don't have the page site, but we do in there say that the terms were carried out in good faith. I can't find the page site right now. I'm sorry to say, but I do know that we said that and we've never conceded it certainly. And in fact, I would submit that the city has bent over backwards to do exactly that. And as a segue into this eighth and ninth, maybe it's a set forth in the appellant's brief, although it's attached in the record at 72 dash 10, page 684. What was happening at this time was that the circuit court was taking upon itself to act in certain ways. And just before this ordinance was amended in December 17th of 2012, the circuit court held that the trustee did not create a trust, that the park had no trustees, that no trust existed and the court felt the need to appoint new commissioners and the city must be deemed to own the park. Now the city is attempting to respond to the court and honor the court's directives as opposed to just ignoring the court. And as the probate court later noted, but this was the 2012 decision that immediately preceded the amendment. But as the court later observed, the trust was stuck in a legal purgatory. And I think that segues well into section eight and nine, because on one hand, the appellants would say, well, if you don't do something city in order to make sure that this is continued as a park, then you're out of luck and you fail under section three. But if you do something and you respond to the circuit court and try to make a change to the ordinance, then you're out of luck on section eight and either way the park fails and we get the land. That's really the essence of it, this hyper-technical reading. So this ordinance wasn't simply repealed in a vacuum or removed in a vacuum or made nuggetory in a vacuum. It was amended or modified as the appellants brief says at page 13. And so it was done to address rulings by the way that were changing. So as you know, there's a lengthy history here and it had been in the circuit court a couple of times and back up to the court of appeals, but there was a ruling just immediately before this in December. And we have trustees who are understandably, these are lay people who can't predict, oh, is this legal argument going to prevail? They are under serious stress. So the city is attempting to do not only what the court was directing, but also to carry out the very purpose of the trustee. And I would like to address the issue on section nine. I think that the questions about section nine were right on point. And if I could use a metaphor, if one has to create this body, Duncan Park, this legal creature. So if we assume it was a building and the building is built and now we put trustees into it, just because the trustees walk out doesn't mean the building isn't there. Just like the commission wouldn't cease to exist. So when you read the language in section nine, you necessarily have to ask yourself as your honor did, how could that occur if not for some repeal or amendment or legislative action? And if that's true, which it has to be, then doesn't that necessarily implicate some type of change contrary to the very literal hypersensitive or hyper-technical reading that the appellants would give to section eight? So I think those questions were laser on point. But do you think, I just find it odd. I mean, it's the sentences, the repeal of said ordinance, whatever, it's the immediately preceding sentence to the ninth section. It would seem odd that they would have, that it would be there and it would seem to be contradictory. I mean, do you agree that if you could imagine a situation where the Duncan Park Commission could cease to exist without repeal of the ordinance, that you could reconcile those two sections? Where they would cease to exist. In order for the commission to cease to exist, I believe you have to have some type of legislative act that addresses the ordinance. Otherwise you're, my metaphor, your building is still there. It's just that the occupants are out. And I know at one point the appellant argued, well, if the trustees aren't there, then it must automatically fail. That's not what the trust code says. There's a means to appoint trustees. So clearly- But I don't think it, it doesn't seem to contemplate, it doesn't seem to contemplate this idea that if the trustees weren't there, but because I don't, that your friend on the other side, his analogy about the two, or his example that the trustees could die, because otherwise why would the court appoint a suitable Duncan Park Commission? Like that assumes that the body still exists as the Duncan Park Commission, doesn't it? If I'm following your question, I think we have to start with the initial clause. And I'm assuming we're looking at section nine still, which says, if the commission shall cease to exist, and then we carry into the remainder, I do believe that there would be a process then for appointment. But to separate that out, I don't think just the fact that trustees are unwilling, or they die, or they resign would destroy the trust or the commission. And I think we would need to have some kind of legislative act. I know I only have about 45 seconds. There were two sections of the side pray doctrine raised below. We raised both of them so that no matter how one would interpret the facts or the deed, either way, they were barred. We meet all of the elements in those statutes. We've cited each of those. There's certainly a wealth of information regarding implausibility and impracticability. In fact, appellant's counsel below, who was also in the probate court, is cited in the Michigan Court of Appeals cases saying not only was it implausible, it was impossible. So clearly, the side pray elements have been met. I'm sorry, I'm out of time. All right, Mr. Gonzaga, your rebuttal. Do I have my three minutes? I'm sorry. Yes. Okay. I'm going to try my best to make three points. First of all, with respect to section three, Mr. Wood has failed to recognize two words that are in there. This is not a complete list of if this happens, and this happens, and this happens. The third thing, and it's the phrase I'm relying on, is actually separated by two words. It says, if the park is renamed or it's used as something other than the park, and in case, it says. Now, I would suggest you that the assertion of the words in case separates this from a simple list of words separated by the word and. The other point to be made about this, and it's quite clear, since the first clause that he's trying to join together would, in fact, implicate the second clause. In other words, the second clause says, if you fail to follow any of these requirements, if you don't have the park anymore as a park, or you don't have it as Duncan Park, the simple fact is the first clause joined together would completely eliminate any use of the first clause implicates the second clause. So, he's rendered the whole clause. Can I ask you, what is the argument that they weren't acting in good faith? I mean, I understand. Oh, this is something that has not been explored in this case, but the defendants in this case, the whole question of why this happened, why did they pass this ordinance has never been explored in this case. Let me just, this is a um, the brief that they filed in this, in this court, in the um, in the uh, district court, identified why they thought that this, this had to be um, this reform had to take place. And what they said in that, I'd like to be able to find to share this, in their reply brief, they said that Mrs. Duncan's intent became impractical in 2014 upon a ruling by the Michigan Court of Appeals. After that ruling, and this is a direct quote from what they were talking about in the circuit court, after that ruling, the active members of the commission resigned. The Michigan Court of Appeals spoke in, in March of 2014, the commissioners of the court. But I don't under, but it seems like they're still, everybody's operating this as a park. That was her intent. What is the, what was bad faith? Is it just the way it's being governed? Like that was bad. This, this was a takeover of the park. The park was completely separate from the city. The city had one job associated with the park. That's all, that's all. The mayor would approve of the people appointed. That was the only role. The question becomes, why did they do what they did? And the, and the reasons that they've given both to the probate court in Ottawa County and to the district court, make no sense. Why did they, why did these people resign? If you look at my brief, one of the trustees, when he was actually in, uh, required to sign an of the ordinance. In other words, the ordinance compelled him to resign, not the other way around. I mean, this is all been, I'm sorry. Okay. Your time's up. We appreciate your argument and we'll consider the case carefully.